Please approach the bench and introduce yourself. Call the next case. Case number 13-1631, American Family Mutual v. Northern Heritage Builders. Good morning, Your Honor. Greg Berg, the N.R.D. I'll be heading with the following evidence. Good morning, Your Honor. Willis McIntrye, the S.N.M.D. C.K.A.D. B.P.O.B. All right, let's proceed. Your Honor, this matter, as you are aware, comes before you on a certified question regarding the applicability of equitable tolling to a statute of limitations issue. As you're probably also aware, the issue of race judicata is also implicated in this matter because the only reason that we have the issue regarding equitable tolling is that the very same lawsuit was previously filed back in 2008, dismissed by Judge Burke at that time and then affirmed on appeal by Justice Hoffman and two others. American Family is here today requesting that the doctrine of equitable tolling, which has never been applied in Illinois to a case like this, it's been applied once involving addressing a federal statute. And the reason that they're here before you is that in the original case, it's a segregation matter and they had brought the claim pursuant to an equitable subrogation claim. Their insurance policy required written subrogation. At the time the case was heard, they did not have the applicable written subrogation from Mr. McGrath, whose home was damaged in this matter, and the case was dismissed on its merits at that time. They come back four years later approximately with the now written subrogation receipt from Mr. McGrath and ask that their claim go forward again. As we pointed out in our briefs, it is simply improper to try to use the concept of equitable tolling to circumvent a prior final decision by the trial court and a final decision by the appellate court on its merits. The danger of this, of course, is that you'll have piecemeal litigation for the rest of your careers. People will hold back certain causes of action and, ah, I didn't have the opportunity to bring it in the original suit or for whatever reason I couldn't bring it in the original suit. This court has already found in the prior appellate decision that American Family Insurance wasn't extraordinarily prevented from bringing that equitable or, excuse me, that contractual subrogation claim. What the court found was American Family Insurance failed to perfect its subrogation rights regarding its payment to Mr. McGrath. They weren't prevented from bringing that claim at that time. They certainly could have. What happened was that when they settled the underlying claim, for whatever reason, before they handed over that $1.2 million or $1.1 million check for property damage, they didn't get the written assignment of the subrogation claim that they needed pursuant to their own insurance policy. That's why we're here today. They did not perfect their rights of subrogation. So every time you read in their briefs or hear in their oral argument we were extraordinarily prevented from pursuing our contractual subrogation rights back in the 2008 case, I suggest we substitute the following language from your own appellate court opinion, which says American Family failed to perfect its subrogation rights. Additionally, under the concept of equitable subrogation, you don't file your suit until after the statute of limitations has run. And that's why you use equitable subrogation to try to toll the statute of limitations. Again, Justices, we don't have that problem here today. They filed their suit against Mr. Plunkett in the 2008 case. There's no statute of limitations to toll. They filed it timely. They got their result. They were unhappy with their result. And now they have come back with a new lawsuit saying that the statute of limitations on the 2012 case should be equitably tolled because apparently Mr. McGrath didn't give them the darn written contractual subrogation receipt back in 2008. Judges, Justices, my client didn't do it. I don't know what There's not one Illinois case cited, and based upon my research, not one case in America where a party has come before a court after they had filed suit or had it There's not one case out there that allows for it. There is one case in Illinois that has applied the concept of equitable tolling, and that is the Williams v. Board of Review case, interpreting of all things a federal statute, the Federal Trade Act of 1974. And forgive me, Justices, it was so dense and so hard to follow, I believe the polling in that matter was simply that because of the rules and regulations involved in that act, they found that the plaintiff in that matter could not have, by following those rules, filed in a timely manner. Again, we don't have that concern here because in the 2008 case, they did file in a timely manner. They've had their chances, Your Honors, and the fact is that You say there's only one case, but there's two cases. There's a case called Salda-Sandin v. Sandin, 213 Illinois Appellate v. 12117. It's a case under the I've read that case, Your Honor, and again, based upon the facts that we have here with the prior filing and their ability to have brought all their claims, I think it is fairly distinguishable, Your Honor. I do appreciate and understand your point, but under circumstances and the facts that we have here, Your Honor, I simply don't believe that it's applicable. I don't want it to be lost on you. The Supreme Court recently, recently is, when I was writing the briefs back in December of 2012 in the Cooney matter, has said, and it's pretty black-letter law, race judicata applies and it should apply to American family insurance if there's a final judgment. I've got a final judgment. That's not before us. I don't believe it. There's one question. Understood, Your Honor. Race judicata was not certified, so that's not before us. Understood, Your Honor. I believe, however, in order to understand the idea and the reason behind why the party is relying upon equitable estoppel to toll an alleged statute of And the reason, tactically, it's before you, Your Honor, is simply it is the only way or the only manner in which, in my opinion, to circumvent the prior findings of both the trial court and the appellate court in the 2008 case. So I think it's part and parcel of this Court's analysis of whether or not the doctrine of equitable estoppel applies in this matter because of the purpose for which it is attempting to be used for. The Court certainly has the ability, if it so chooses, to take on related questions needed to address this issue, and I would advise the Court or I would represent the Court in order to fully address these issues, you need to be at least aware of the 2008 case and the findings in that matter. Do you want to save some time for your rebuttal? Your Honor, unless the bench has any questions for me on this issue right now, I think I've covered what I wanted to cover. Thank you very much. Let me ask you a question. Was the American family prevented from filing a slot suit in an extraordinary manner here? Yes. Tell me, what is that extraordinary manner? The extraordinary manner was the kind of unique situation that developed here in the sense that the federal case was filed, the judgment was entered against the American family in that case. The counsel suggests that at that point in time, there should have been an assignment. There was no negotiating with respect to that particular settlement that was to pay the $1.2 million and we release our claims under confidentiality agreements. There was no negotiating terms with respect to that. That's why it was not part of that deal. After we filed the case for Judge Burke, the 2008 case, Judge Burke, for the first time, raised this issue of an assignment, which at that time, under the law in Illinois, was really not a prerequisite to bring in a case for subrogation. It was an open question that the Supreme Court hadn't really dealt with. And I believe Judge Burke indicated that. What I mean, you know, since subrogation started and, you know, you practiced when subrogation started, I practiced when subrogation started in things other than property damage. You always had to obtain an executed assignment, especially when the policy provided such. You guys didn't get it here, you didn't do anything to obtain it, and now you want an equitable tolling. Well, I disagree with Your Honor that I... Well, did the policy specifically provide for subrogation? It did, didn't it? You can't really deny that, can you? It did provide for, as an option, you could get an assignment. It wasn't mandatory. So what happened was, and I do disagree with Your Honor's view of that, having done subrogation and not getting assignments and going to court, we asked the McGraths for the assignment. They refused. What were my choices at that point? I had to file a lawsuit to enforce my client's right to an assignment. That was filed in the chance reaction as a specific performance case. At the same time, the Judge Burke's 2008 case was pending as to whether or not there was an assignment required or there could be equitable claims pursued without an assignment. Both those cases were on appeal at the very time the consulate suggests the statute of limitations ran. And I'm saying to you, the extraordinary events that occurred here is that we had two appeals covering the causes of action on a subrogation case under two different theories of recovery, in which the courts at that time had said, no, there wasn't under either. But then at the end of the day, when the decisions were rendered, Judge Burke's decision was affirmed and Judge Algren's decision was reversed, finding that there was a right to an assignment. That was the first time, based upon Judge Burke's ruling and the affirmance by the appellate court, that the insurance company had the opportunity, based upon the state of the law, to bring an action, which it did. Well, you know, if we follow your theory, then whenever an insurance company has a subrogation clause, then they do not have to obtain an assignment of the subrogation rights. It would be automatic. I, again, disagree. I think that the decision by the appellate court that was decided originally by Judge Burke made it pretty clear that you now have to have a written assignment. And I think that, practically speaking, insurance companies in this state are all getting written assignments. That is not something that occurred prior to the filing of this case. When do we take equitable tolling because all your actions is because of the merit of the plaintiff, not of the defendant? There's nothing the defendant did to say that they lulled you into not filing your lawsuit. I agree with that. But they were aware that there was this pending case concerning the assignment. In the decision by the side of Judge Elgin's case, where they reversed the case, they said there had been a split of the causes of action and it had been agreed to by the McGraths. And I'm not so sure how one could have done anything else in light of the recalcitrantness of the McGraths other than to file a separate lawsuit to enforce the assignment. Because without that assignment, we had no right to go into court at all. But why would you give someone $1.2 million without getting an assignment? It was a judgment, Judge. It was pay up or go to the Seventh Circuit. It wasn't a hands-length transaction. It was just pay up. And they contested the right to an assignment. So my client wanted to pay up and not have to deal with the Seventh Circuit. Equitable tolling, even though it hasn't been applied to a lot of cases, and I wouldn't expect it to because it's kind of a unique rule in and of itself. It's a rule that the judiciary has the inherent power to enforce rules of proceedings when justice demands. And I don't see how an American family can get justice in a situation where they're basically pursuing their rights diligently against a defendant who knows what's going on. And there are two appeals, and those appeals control the end result of what an American family can and cannot do. And during that period of time, with all due respect, I think those cases should have been told. And when the assignment was gotten, the suit was filed against the parties. If there's any questions, otherwise I'll sit down. Very short rebuttal. How do you just briefly respond to the fact that Judge Apron's decision was reversed? How do I respond to it? Judge, I wasn't a party to it. Did we know it was pending? Yes. Did I have an interest in it? The answer is no. Did they know about it? You bet they knew about it. Maybe the better question is, why didn't they combine that case with the one in front of Judge Burke so it all could have been decided together? You can ask yourselves the question, why would a party want separate issues in front of two judges? There has to be some advantage to them. As to my client, Judge, there's no advantage to them. Well, one is more typically a chance reaction and one was clearly in the law division because it belongs in the law division. Well, you know, that's an interesting point too, Judge, but as you know from the case that was in front of Judge Burke, the theory that they ultimately proceeded on after we got through contract, negligence, economic losses, equitable subrogation in the law division. So I understand your question, Judge, but if Judge Burke is already handling an equitable remedy, why not bring it all in front of him? The short answer to your question, Judge, I don't know. I simply don't know. It's always a good answer. It also happens to have the truth behind it, Judge. Now, to go back to what some of you have raised is this. We don't operate in a vacuum in settling $1.2 million losses. We've had cases with some of you and cases before some of you in the past. There's a reason, and again, Justice Gordon, I don't know what it is, but there's a reason they didn't get a written subrogation assignment from Mr. McGrath at the time they paid $1.2 million. I wasn't privy to it. I wasn't there. But I think if you look back on every one of your careers, I doubt any of you have ever settled a case north of $500,000 or $600,000 where if there was an assignment to be had as part of the settlement, even after summary judgment had been entered, you got the assignment because that's what the insurance contracts require. So getting back to equitable tolling, respectfully, this is not the case to apply the concept of equitable tolling to under its facts and under its procedural history because simply, Your Honors, as I stated earlier, there's no statute to toll. American family file. This has to be a brief rebuttal. Well, Judge, I thought I had ten minutes, but if Your Honor says I have less, I'll certainly take less. Go ahead. Finish up. The final point is simply this. There's no statute to toll because they previously filed their claim against my client. They've had their day. All the rest of this, Your Honors, is please save me from my own misstep because I didn't get the written assignment from Mr. McGrath when we paid him $1.2 million. Thank you very much. Thank you. This was an excellent case presented very excellently and it's a case that comes around only once in a long time. We certainly appreciate it and we'll take it under advisement.